Cuma, per O’Nealj,, J.
The facts of this case have been passed upon by a jury, and they have found that the Minerva was uninjured in crossing the bar of the harbour of Charleston, and that she was subsequently capsized in the gale. That there were many facts justifying this conclusion, cannot be denied. It was my own opinion formed at the trial, but withheld as much as possible from the jury. Under such circumstances, it would, according to our settled rules, be in vain to talk about a new trial on the facts. The only question which remains is, whether the fact of sailing from a harbor, where it is customary to take a pilot, without one, discharged the underwriters 1 The cases cited in the report, show very fully that if the vessel had been lost, in consequence of any injury received in that part of a voyage in which a pilot was necessary, that then the insurers would have been discharged. But the finding of the jury negatives the assumption that the Minerva was lost in crossing the bar of the harbour of Charleston, and ascribes her loss to the perils of the sea, outside of the bar. On the trial, and in my report, I fell into the error so common in the elementary works, of making the employment of a pilot a part of the sea-worthiness of the vessel; nothing can enter into that, which is not for the whole voyage. The business of a pilot is merely temporary. He is a part of the crew of a vessel for only a few miles, or a few hours. He navigates her only occasionally; under such circumstances, it would be an abuse of terms to say, that a competent pilot was necessary to make a vessel sea-worthy. The true notion seems to me to be this: if a vessel without a pilot sustain injury in entering or leaving a harbor where it is customary to have a pilot; that then such injury does not come within the perils insured against. It is not a peril of the sea; it is a loss from the bad navigation of the *253 vessel, and is to be set down to the fault of the master, and consequently the owners would be liable for it. The general rule is, if the owners would not be liable for the loss, that then the insurers are. Let us suppose a case, and it will perhaps furnish a just test for this. If the goods’ on board the Minerva had not been insured, and this action was against the owners, and the jury had found, specially, that the Minerva sailed without a pilot, from the harbor of Charleston, when it was customary and proper to employ one, but crossed the bar in safety, and was subsequently capsized in the ocean, in the gale of the 28th and 29th of October, to whom must the postea have been delivered? Unquestionably to the defendants ; for the loss would have been from the act of God. Does not this answer show at once the liability of the insurers ? They undertook and warranted against the very peril from which the loss arises, and yet they would be excused by matter which had no effect in producing it. This would be to submit the facts of the case, and with them its justice, to give effect to a legal definition made by elementary writers, from cases in which the loss arises from the non-employment of a pilot, in a case in which it happened from another cause. In the case of Law v. Hollingsworth, 7 T. R. 156, from which Phillips extracts the principle “ that in navigating a river, or approaching or leaving a harbor, where it is customary for vessels of the burthen and description of that insured to take a pilot, the vessel is not seaworthy unless she have such a pilot,” the injury was sustained in ascending the Thames, at a point where a pilot should have been on board; and in that .case Lord Kenyon put his judgment expressly on the ground that “ no pilot was on board at the time the accident happened.” That case shows that instead of the discharge of the underwriters being ascribed-to sea-worthiness, it is set down expressly to the want of a skilful navigation at the place where the accident occurred. The same remark may be made of the cases of Depeau v. Jones, 1 Brev. R. 437, and Stanwood v. Rich. I think, therefore, after great consideration, that in law and fact the verdict is right, and that the motion for new trial ought to be dismissed; and it is so ordered.
Note. — The reader is referred to the following additional authorities, as to what constitutes sea-worthiness, and as to the employment or non-employment of pilots, as establishing principles perhaps analogous to those laid down by the court in the preceding case; or, at all events, as illustrating the general doctrine involved in it.
Every ship must, at the commencement of the voyage insured, possess all the qualities of sea-worthiness, and be navigated by a competent master and crew. — M'Lanahan v. The Universal Ins. Co. 1 Peters, 183.
Sea-worthiness in port, or while lying in the offing, may be one thing, and sea-worthiness for the whole voyage, quite another. — ibid.
What is a competent crew for the voyage — at what time such crew should be on board — what is the proper pilot ground — what is the course and usage of trade in relation to the master and crew being on board when the ship breaks ground for the voyage; are questions of fact, dependent upon nautical testimony, and exclusively within the province of the jury. ibid.
Though want of sea-worthiness, at the time the risk commenced, may not vacate the policy, provided the vessel is sea-worthy at the time the voyage commences; yet the vessel cannot go out of her course to supply such want. As, if at the time the risk commences, the vessel is not sufficiently manned, she may afterwards, and before the voyage commences, supply that want; yet she cannot excuse a deviation for the purpose of procuring hands.— Cruder v. The Philad. Ins. Co., 2 Wash. C. C. R. 339.
A cargo was insured at and from North-Carolina to New-York; Held, that if the vessel was sea-worthy when she passed the boundary line of North-Carolina, this was sufficient; and her unseaworthiness previous to that point of time would be no defence in an action against the underwriters for a loss. — Treadwell v. Union Ins. Co., 6 Cowen, 270.
Sea-worthiness is an implied warranty in a policy of insurance ; it relates, however, only to the commencement of the risk. If it be then broken, the insurer is discharged from liability; but a breach of this warranty after the commencement of the risk does not discharge the insurer from loss subsequently happening, unless such loss be the consequence of unseaworthiness. — Am. Ins. Co. v. Ogden, 15 Wend., 532.
A ship may be sea-worthy in harbor in a state which would not be sufficient for a voyage ; therefore on a policy at and from the port at which the ship was undergoing repairs at the time of insurance, Held, that although not sea-worthy for a voyage, she was sufficiently so in harbor, and that there was no breach of the implied warranty. — Forbes v. Wilson, and Hibbert v. Martin, 1 Park. Ins., 344.; 1 Camp., 538.
Hunt and Memminger, for the motion.
Petigru, contra.
Evans, Earle, and Butler, Justices, concurred.
The question whether a ship on a voyage from Madras to London is not sea-worthy if she have no person on board her besides the captain, who is capable of navigating her, is a question of fact for the jury, and not a question of law to be- determined by the judge. — Clifford v. Hunter, M. & M., 103; 3 C. & P. 16.
As a full complement of men is not necessary in harbor, a ship does not cease to be sea-worthy for want of a crew till she sails on the voyage without a crew. — Annen v. Woodman, 3 Taunt. 299.
The vessel arrived off Sierra Leone about 3 o’clock in the afternoon; the captain hoisted signals for a pilot, and none having come off by 10, he attempted to enter the harbor without one, and the vessel was lost. Held, that the captain being a person of competent skill, the underwriters were liable for the loss sustained; such an exercise of discretion comes within the principles applied to other losses incurred by the error of the master or captain. — 2 B. & A. 73; 5 B. & A. 171. Phillips v. Headlam, 2 B. & A. 380; Am. Jurist, vol. ix. 106.
Q,uere, whether the loss in the principal case may not be considered, after all, as having arisen from the fault of the master, in putting'out to sea in such threatening and tempestuous weather as the evidence represents it to have been at the time 1 (See the testimony.) In Mars, on Ins., vol. 1, 215, it is said “ that upon principles of natural justice the insurer can in no case make himself answerable for any loss or damage proceeding directly from the fault of the insured.” In Abbott on Shipping, p. 265, in treating of the duties of the masters and owners of ships, it is said of the master, 11 He must on no account sail out during tempestuous weather citing Molloy and Roccus to the same effect. R.